[Cite as *State v. Jarrell*, 2017-Ohio-520.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA8 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| CHAD V. JARRELL | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 02/06/17** |

APPEARANCES:

Timothy P. Gleeson, Gleeson Law Office, Logan, Ohio, for Appellant.

Adam R. Salisbury, Gallipolis City Solicitor, Gallipolis, Ohio, for Appellee.

McFarland, J.

{¶1} Chad Jarrell appeals his conviction for a violation of R.C.

4511.19(A)(1), operating a vehicle under the influence of alcohol (OVI), in the

Gallipolis Municipal Court, entered November 18, 2015. Appellant argues the trial

court erred by admitting testimony from a Ohio State Highway Patrol trooper

regarding the numerical display during an incomplete BAC Datamaster test.

Specifically, Appellant argues the admission of the trooper's testimony was plain

error and also ineffective assistance of counsel. Upon review of the record and

relevant Ohio law, we find no reasonable probability that any error resulted in

prejudice to Appellant.  Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.

## FACTS

{¶2}  On October 7, 2014, Trooper Large of the Ohio State Highway Patrol arrested Appellant for OVI.[1]  The Appellant was arraigned, entered a plea of not guilty, and was given court-appointed counsel.  Numerous pretrial conferences were held.  Subsequently, Appellant's first attorney was removed and another attorney was appointed.

{¶3}  On November 9, 2015, Appellant filed a motion to suppress challenging the stop and arrest.  After a hearing on Appellant's motion, the trial court denied the motion to suppress and Appellant proceeded to jury trial.  The State of Ohio presented the testimony of Trooper Large of the Ohio State Highway Patrol (OSHP) and Patrolman Adkins of the Gallipolis Police Department.

{¶4}  To summarize, Trooper Large testified that he is employed by the Ohio State Highway Patrol, Gallipolis Post, and had been a trooper 3 years.  He was working in that capacity on October 7 and 8, 2014.  Trooper Large was watching traffic near the BP gas station and store outside of Gallipolis when he observed the vehicle operated by Appellant.  He identified a video recording, State's Exhibit F, made from his cruiser's camera video system, which captured

---

[1] Appellant was also charged with and convicted of violations of R.C. 4511.39 (no turn signal); 4511.25 (left of center); and R.C. 4513.263 (seatbelt violation).

Appellant's driving, stop, and arrest. Trooper Large observed and the video noted that Appellant failed to use his turn signal, was driving left of center and in the oncoming lane. At this point, Trooper Large initiated a traffic stop.

{¶5} Appellant was the only occupant of his vehicle and while he was still inside, Trooper Large noticed signs of alcohol consumption, which included bloodshot and glassy eyes, an odor of alcoholic beverage "just pouring out of the vehicle," slurred speech, and his pupils were constricted, which indicated to the trooper use of narcotics. And, he was not wearing his seatbelt. After a conversation with Appellant's cousin, who had come from a nearby house, Trooper Large asked Appellant to step outside of the vehicle to conduct standardized field sobriety testing.

{¶6} Trooper Large performed the horizontal gaze nystagmus test ("HGN"). On each eye, the trooper was looking for lack of smooth pursuit, nystagmus at maximum deviation, and nystagmus within an onset prior to a 45 degree angle. Trooper Large testified Appellant was only partially following instructions after multiple repetitions, which he considered another clue of impairment. There are 3 clues for each eye and Appellant showed all 6 clues. Appellant advised the trooper he had multiple back and leg issues so he was not asked to take the one-leg stand and walk-and-turn field sobriety tests. Trooper Large also testified that Appellant stumbled and swayed a few times.

**{¶7}** After the field sobriety testing, Trooper Large proceeded to have Appellant perform a portable breath test (PBT). Despite multiple instructions, Appellant did not follow them. Trooper Large considered this lack of following instructions to be an indicator of alcohol impairment. He also opined Appellant was trying to defeat the test. At this point, Trooper Large decided to place Appellant under arrest. Appellant volunteered that he was on pain medication.

**{¶8}** Trooper Large testified he completed an impaired driver report, Exhibit B, and listed Appellant as having a strong odor of alcohol, very slurred speech, and evidence of drug use.[2]

**{¶9}** Trooper Large continued, testifying that he was the only trooper on patrol that night. He needed to conduct a breath test and needed a witness as he read the BMV 2255 form to Appellant. He determined to go to the Gallipolis Police Department. Trooper Large's direct testimony concluded by his testimony that Patrolman Adkins was there to observe his reading of the form and operation of the BAC Datamaster machine. Appellant did not complete the breath test properly after being given multiple chances. Trooper Large then offered him a urine test. Appellant first indicated he wanted to, and then he later did not take the test because he could not do it at a time he chose. Additional testimony of the trooper will be set forth below.

---

[2] Trooper Large clarified that he had made a mistake on the report, regarding Appellant's pupil size. He used "dilated" when he should have used "constricted."

{¶10} Patrolman Adkins testified he had been employed by the Gallipolis Police Department as a patrolman for 17 years. He witnessed Trooper Large's attempted administration of the breath test, completion of required forms, and signed the BMV 2255 form as a witness. He was not the arresting officer or the investigating officer in Appellant's case. He recalled only "smelling a strong odor of alcohol coming from [Appellant's] person." He also recalled Appellant was instructed multiple times on how to take the test but he was "not providing enough sample for the machine to accept."

{¶11} Patrolman Adkins testified he is the person that performs a calibration check on the BAC Datamaster. The machine had to be tested every 7 days. The machine was tested on October 1st, and Appellant took his test on October 8th. Patrolman Adkins testified between October 1st and October 8th, he had no reason to suspect the machine was not working properly. On recross, he reiterated that Appellant's test was the only one done that week and the machine failed to produce a reading. Additional testimony from Patrolman Adkins is discussed below.

{¶12} The State also played the DVD recording, Exhibit F, showing Appellant's traffic violations, his stop and arrest. Appellant did not present evidence. At the close of trial, the jury returned guilty verdicts.

{¶13} On November 18, 2015, Appellant was sentenced to a 60-day jail sentence, $900.00 fine and costs, one-year operator's license suspension, and intensive probation until November 2017. This timely appeal followed. Where relevant, additional facts are set forth below.

## ASSIGNMENTS OF ERROR

"I. THE ADMISSION OF TESIMONY OF THE NUMERICAL DISPLAY DURING AN INCOMPLETE BAC DATAMASTER TEST PREJUDICED JARRELL AND DEPRIVED HIM OF DUE PROCESS, WHETHER BY PLAIN ERROR ANALYSIS OR BY INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT."

## STANDARD OF REVIEW

{¶14} Appellant did not object and ask for a curative instruction for the testimony at issue herein. As such, Appellant's arguments are to be reviewed under the "plain error" standard of review. Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. However, the accused bears the burden of proof to demonstrate plain error on the record, *Id.*; *State v. Quarterman,* 140 Ohio St.3d 454, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

However, even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.*

{¶15}  But even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Rogers, supra,* at ¶ 23; *Barnes* at ¶ 27, 759 N.E.2d 1240, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

## LEGAL ANALYSIS

{¶16}  Appellant argues Trooper Large's testimony regarding the BAC Datamaster's screen – that the screen displayed a blood alcohol level value as high as .156 – was non-responsive to a question posed during cross-examination, yet trial counsel did not object to the testimony or seek a curative instruction. Appellant first argues this was plain error because the impact of the testimony about Jarrell's possible blood alcohol level of .156 must have affected the outcome of the proceedings, given that (1) Trooper Large characterized the case as "borderline"; and (2) Patrolman Adkins did not notice any indicia of impairment other than an odor of alcohol.

{¶17} In response, the State contends that Appellant has not shown any error by permitting the testimony affected the outcome of the proceedings. Appellee contends that Appellant has grossly misrepresented the testimony of Trooper Large and Patrolman Adkins. Trooper Large explained what he meant by "borderline" during his redirect testimony. And, Patrolman Adkins explained his limited involvement in Appellant's case during his redirect testimony. Furthermore, the jury had the benefit of a video of the entire exchange between Appellant and Trooper Large during the entire traffic stop. The State concludes, based upon the above, the assertion that the incomplete BAC result testimony must have affected the outcome of the trial is not supported.

{¶18} Appellant directs us to *State v. Zamorski*, 141 Ohio App.3d 521, 526, 752 N.E.2d 288 (1st Dist.2000). There, Zamorski was involved in a head-on collision when her car swerved left of the centerline. Zamorski was charged and found guilty by a jury of operating her car under the influence of alcohol. On appeal, Zamorski raised two assignments of error: (1) that the trial court abused its discretion to Zamorski's material prejudice by allowing an officer to testify about a temporary visual display appearing on an intoxilyzer during an invalid breath-alcohol test; and (2) ineffective assistance of counsel as a result of the prejudicial testimony. The First District Court of Appeals agreed that the trial court abused its

discretion to Zamorski's material prejudice and found, based upon disposition of the first assignment of error, the ineffective assistance claim to be moot.

{¶19}   The appellate court noted that at Zamorski's trial, the State introduced testimony that Zamorski smelled of alcohol and may have been acting erratically immediately after the accident.  Additionally, the investigating officer testified that when he arrived at the accident scene, Zamorski's eyes appeared bloodshot and watery.  The officer testified that he conducted six standard field sobriety tests at the scene of the accident, and that Zamorski failed five of the six tests.  Based on his initial observations and Zamorski's performance during the field-sobriety tests, the officer arrested Zamorski and transported her to the police station for an intoxilyzer test.

{¶20}   At the station, the officer attempted to obtain a breath sample from Zamorski so that an intoxilyzer machine could provide an analysis of Zamorski's breath-alcohol content.  Because the officer discovered that Zamorski had a mint in her mouth, he was required to wait thirty minutes before conducting the test.  When the officer finally attempted the test, the printed result first read "Invalid Test," and the second line read "Invalid Sample."  The officer attributed the invalid sample to Zamorski's failure to blow hard enough into the machine.  By this time, the test was outside the two-hour limit prescribed for such tests by statute, and the officer recorded that Zamorski had refused to participate in the intoxilyzer test.

{¶21}  By contrast, Zamorski's trial counsel introduced testimony from Zamorski's doctor regarding her history of migraine headaches and her diagnosis with "Adies Tonic Pupil," in which one pupil is larger than the other.  The doctor testified that Zamorski began treatment in 1996 and that, generally, migraine headaches could manifest in such a way as to explain how Zamorski lost control of her car.  Other testimony accounted for Zamorski's whereabouts on the evening in question and indicated that Zamorski did not appear impaired approximately thirty minutes before the accident.  Also, Zamorski suffered a broken nose and a concussion in the accident, potentially accounting for her poor performance during the field sobriety tests.

{¶22}  Further, Zamorski directly testified regarding her consumption of alcohol before the accident.  She testified that she had erroneously received a mixed drink earlier in the evening but had returned it when she discovered that it contained alcohol.  The record indicated that while Zamorski never specifically testified that she drank any part of this particular drink, she also never directly denied that she drank any alcohol.

{¶23}  After the defense rested, the State moved to introduce testimony regarding the officer's observation of the intoxilyzer's visual display of breath-alcohol content during the invalid test.  The State claimed that Zamorski had testified that she had not consumed any alcohol that night, and that the desired

testimony of the officer would impeach her. Zamorski's trial counsel objected. However, the trial court ruled that the defense would be allowed to reopen its case and clarify through Zamorski's testimony that she had indeed tasted the alcoholic drink before she returned it. Despite trial counsel's strenuous objections, the trial court also allowed the officer to testify about the visual display appearing on the intoxilyzer during the invalid test. The officer testified that he saw a reading of ".141" displayed on the machine, well over the prohibited level of .10 that the State incidentally mentioned in its earlier voir dire of prospective jurors.

{¶24} Zamorski claimed that the trial court abused its discretion in admitting the officer's testimony and the appellate court agreed. In its opinion, the appellate court pointed out Evid.R. 401 defines "relevant evidence" as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," as well as Evid.R. 402, "[e]vidence which is not relevant is not admissible." The *Zamorski* court noted:

> "It is settled in Ohio that a trial court has broad discretion in applying the rules of evidence to determine whether evidence is relevant and therefore generally admissible. A trial court's decision as to the admissibility of relevant evidence should not be disturbed on review unless the trial court has abused that broad discretion and the party affected by the abuse has consequently suffered material prejudice. We hold that both prongs of that test are satisfied here."

{¶25} The *Zamorski* court reasoned:

"There is no evidence in the record before us, and we find no case law, to support in any way the contention that a visual display appearing during an invalid intoxilyzer test is at all relevant. We also find nothing to suggest that a visual display, occurring during an invalid test, may even be relevant for the limited purpose of proving that a person has consumed some quantity of alcohol at some point in the recent past. An invalid test, without some explanation to the contrary, is, by the plain meaning of the word "invalid," simply without basis in fact. Evidence without a basis in fact is irrelevant. Without a detailed explanation and justification for how a visual display during an invalid test is relevant, which would necessarily involve expert testimony, any reference to that visual display is irrelevant, and therefore inadmissible. We can discern no sound reasoning process from the record before us to support the admission of the officer's testimony."

{¶26} *Zamorski* further pointed out that Evid.R. 403(A) states that even relevant evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The danger of unfair prejudice to the defendant is the reason that expert testimony is required to explain the significance of a valid breath-alcohol test result below the prohibited level of .10. In cases involving a charge of driving under the influence, the concern is that "prejudice could result from a jury giving too much weight to the test result itself rather than focusing on the critical issue of the defendant's conduct."

{¶27} The *Zamorski* court first held that the trial court erred in admitting irrelevant testimony, and went on to consider whether Zamorski suffered material prejudice as a result of the error. The court observed:

> "Prejudicial error is an error that affects the outcome of a case. Where a particular record contains other overwhelming evidence of a defendant's guilt, we have previously held that an error in the admission of evidence is not prejudicial. But, in this case, there is no overwhelming evidence of Zamorski's guilt in the record before us. The state presented evidence that Zamorski may have been under the influence of alcohol at the time of the accident. But the defense presented credible evidence to the contrary. We hold that the erroneously admitted evidence, testimony concerning the temporary display of a prohibited breath-alcohol level during an invalid test, could well have upset the balance and affected the outcome in an otherwise close case."

{¶28} This court has addressed similar arguments in *Gallipolis v. Russell*, 4th Dist. Gallia No. 98CA4, 1998 WL 833612 (Nov. 27, 1998). There, the evidence disclosed in the early hours of May 23, 1997, at about 1:00 a.m., Gallipolis police officers observed Russell's vehicle weaving, almost striking a parked car, and failing to stop at a stop sign. When the officers stopped the car, they administered a field sobriety test and arrested Ms. Russell for OVI and other offenses. She was convicted and on appeal, argued that the trial court committed prejudicial error in allowing one of the officers to testify about the breathalizer results when the test was incomplete and she was charged with a refusal to submit to the breath test.

{¶29} At Russell's trial, one of the arresting officers was permitted to testify, over objection, that she tried to take the test but did not give a sufficient breath sample; that the State alleged she refused to take the test; and that she did not complete the test as instructed. The officer's testimony continued as follows:

Q.     And what did you actually see on that before she stopped blowing?

MR. CONLEY: Your honor, we have entered an objection so, as for the record, so the jury understands that.

COURT: Right. And I, I think that I had indicated that the, for the record, I don't think we need to remove the jury for this, that these are observations only made in the course of this and having to do with the refusal. And are the, we get into areas where it would have to do with the actual, ultimate into the A(3) charge that will be stricken.

Q.     Okay, how high did these numbers actually get up to before she stopped blowing?

A.     .218

Q.     .218

A.     Yes.

Q.     And what happens if you continue blowing into that machine for the prescribed period of time?

A.      It gives, what the machine does, when it gets the sufficient breath sample, it shuts down and gives a printed readout of what her test would, what the suspect test would be.

Q.     That's if you breathe the prescribed period of time?

A.     That's correct.

Q.     Did you get a printout for the defendant?

A.     No, I did not."

{¶30}  Then, in closing argument, the prosecution was permitted to comment upon the testimony of the officers as follows:

"However, Sergeant Jacks told you that the readout on the machine got up to a .218 before she stopped blowing and didn't blow long enough for it to print out and register. Otherwise, we would have had that evidence here today. So he wrote her down for a refusal. That she refused to take the test because she refused to blow long enough to get the machine to actually print out a ticket. However again he saw the machine with a .218, over twice the limit."

{¶31} In our decision, we concluded:

"Once having determined that they were unable to get an accurate print-out from the machine, and having concluded that Russell's conduct was tantamount to a refusal to take the test, the reference to a blood alcohol content of .218, without some detailed explanation and justification, was not admissible for any purpose. In fact, the defendant's refusal to take the breath test, while admissible in a criminal prosecution for drunk driving, cannot be reconciled with the admission of any test results.

Here, the investigating officers had already determined that the test results were unacceptable because Russell 'would not take the test properly' and because 'she was trying to fool the machine.' Hence, the doubtful reliability of the supercharged reference to a blood alcohol content of '.218' was also substantially outweighed by the danger of unfair prejudice. Accordingly, the second assignment of error is well made."

{¶32} The Tenth District Court of Appeals' decision in *Columbus v. Mullins,* 10th Dist. Franklin No. 03AP-623, 2004-Ohio-1059, cited *Zamorski* when considering similar issues, although it reached a different conclusion regarding prejudice to the defendant. Mullins was at a bar in Columbus, Ohio, between 9:00 p.m. and 12:00a.m. on the evening of November 26, 2002. According to a friend, Mullins consumed two 12-ounce cans of beer during this period of time. Mullins left the bar but returned at approximately 1:00 a.m. to pick up her friend and give

her a ride home.  At approximately 1:45 a.m., Mullins was driving southbound on High Street when a Columbus police officer observed Mullins' vehicle drift across the broken white line separating the two southbound lanes and straddle the lane marker for approximately one block.  The officer shortly thereafter initiated a traffic stop.  Upon approaching Mullins' vehicle, the officer detected an odor of an alcoholic beverage.  The officer conducted several field sobriety tests upon Mullins and after determining that she had either failed or refused to complete the tests, he placed her under arrest and transported her to the Franklin County Jail.  At the jail, the officer attempted to administer a breath test.  Mullins blew into the machine, but ultimately stopped blowing before a valid result could be obtained, and the machine registered the test as having been refused.  Mullins was charged and convicted of driving under the influence of alcohol and failure to obey traffic signs.

{¶33}  On appeal, Mullins argued the arresting officer's testimony that while administering a breath test to appellant, "[s]he started to blow into the machine, and she was giving a steady tone, and she continued to give a steady tone.  The BAC went up above .10—," warranted a mistrial.  However, defense counsel objected and argued at the bench that any testimony regarding numerical values was irrelevant and inadmissible because a valid test result was never obtained and thus should not be introduced by appellee.  The court agreed in part, ruling that the officer would be prohibited from testifying as to any numerical results displayed

by the breath test machine, but he would be allowed to testify as to his observations regarding whether the numerical display was "changing." There was no further objection. The court then stated to the jury, "[t]he jury is to disregard any testimony as to any specific result. The officer's testimony as indicated would only be as to any nonspecific result as to the test."

{¶34} The arresting officer continued to testify as follows:

"As I stated, the tone was not beeping, it was going, 'doo, doo,' gives a steady tone, like an audible steady tone. You can see the display rise up, the person's level of the sample that they're giving rise [sic] up. It continued to rise to–continued to rise as she gave a sample. And then at a certain point in time, the tone stopped, and she had her cheeks kind of puffy and they were a little bit red. And I said, 'The machine's telling me you're not blowing. Why did you stop blowing? Continue to keep blowing.' And she let loose and said, 'I can't, I can't. I've already blown. * * *' " (Tr. at 62).

{¶35} Mullins asserted that the trial judge's admonition regarding numerical display testimony did not cure the error that occurred when the officer testified regarding the .10 "result." She also urged reversal of her conviction on account of the officer's subsequent testimony that the breath test machine's display "continued to rise." In analyzing Mullins' arguments, the appellate court noted:

"The record reflects, and appellant does not dispute, that the trial court immediately sustained her objection to testimony regarding any specific numerical 'result' displayed on the machine while appellant was attempting to blow into it. Further, the court told the jury to 'disregard any testimony as to any specific result.' We recognize that the court's next statement to the jury (regarding a 'nonspecific result') is somewhat unclear; however, the fact remains that the court properly instructed the jury to disregard numerical results and admonished

appellee to eliminate further reference to numerical results from the remainder of the officer's testimony. The jury is presumed to have followed the court's instruction. *Woodard, supra.* We find nothing in the record that overcomes this presumption and demonstrates that the numerical result testimony was so prejudicial as to require a reversal. Prejudicial error is an error that affects the outcome of a case. *State v. Zamorski*, 141 Ohio App.3d 521, 526, 752 N.E.2d 288 (1st Dist.2000). Because the jury was presented with sufficient evidence upon which it could have based its guilty verdict, we cannot say that the testimony concerning the temporary numerical display was prejudicial."

\* \* \*

 "We likewise find no prejudicial error in the officer's testimony that the BAC visual display 'continued to rise.' We note that appellant made no objection to this testimony, even though the trial judge gave counsel advance notice of its ruling during a bench conference. Thus, appellant waived all but plain error. On the state of the record, and for the reasons discussed above, we find this testimony was not prejudicial and decline to reverse appellant's conviction on that basis. For all of the foregoing reasons, appellant's first assignment of error is overruled."

{¶36} In the case sub judice, Trooper Large testified on direct examination as follows in response to a question as to how Appellant did not complete the breath tests:

"Same thing as the, what he was doing with the PBT, he just wasn't blowing into it for the full um, sample period. I guess you would say that enough air to complete the sample. He would start to blow into it, uh, and you know you would hear the steady tone as he was you know, as you were supposed to be doing and then you know the, where he was sitting and where the Datamaster machine is, is right next to each other and on the screen of it, it actually shows your blood alcohol level um, on the screen. Um, and as it was rising, uh, he would then stop blowing like you're supposed to and then blow you know, either loosen his lips up or blow or not blow at all and then you

know, the percentage on the screen would go down because there's no, you know the breath was not continued, it stopped and then it would beep. And we'd you know, coach him again * * *."

{¶37} Notably, there was no objection to this testimony that the blood alcohol level displayed on the screen "was rising," and the trooper did not state a numerical value. The testimony at issue was elicited on Trooper Large's cross-examination at page 311 of the trial transcript. The exchange is set forth as follows:

Q.     Okay. When he was in the station and blew into the Datamaster did it generate a tone indicating that he was blowing into it?

A.     Uh, yes and no.

Q.     Okay.

A.     It was, throughout both tests he did, he did both things. He would start to blow into it and then he would stop.

Q.     Okay. So he would blow into it for a time and, and the computer would generate a signal showing that he was blowing correctly into it?

A.     Yes, the tone would, all the time he would do it you know, the continuous tone and the, like I said earlier, there's a screen on the DataMaster that actually shows what the blood alcohol level is um, and it went up to a, at one point it went up to a .156 and then it, obviously when he, when someone would stop blowing into it, it would decrease and go back down.

{¶38} We agree with Appellant that the trooper's testimony that "at one point it went up to a .156" is irrelevant under Evid.R. 401 and non-responsive to the question posed. However, because no objection was made requesting to strike

the testimony and issue a curative instruction, we are constrained to analyze

Appellant's argument under the plain error standard. Therefore, we begin by

considering whether, on the record before us, there is a reasonable probability that

the impact of the improper testimony resulted in prejudice, i.e. affected the

outcome of the proceeding.

{¶39} In essence, Appellant characterizes the evidence in his case as

"weak," and that the allegedly prejudicial testimony must have affected the

outcome of the proceeding, given that Trooper Large described the case as

"borderline," and Patrolman Adkins did not notice any indicia of impairment other

than the odor of alcohol. In closing, the State emphasized Appellant's traffic

violations and that Appellant intentionally interfered with the PBT test and the

BAC test. Defense counsel emphasized there were no chemical tests. He also

challenged the credibility of Trooper Large, a relatively new trooper, who testified

he saw bloodshot glassy eyes, slurred speech, stumbling and swaying, in contrast

to the testimony of Patrolman Adkins, with 17 years of experience, who testified

only to a strong odor of alcohol.

{¶40} When Trooper Large initially encountered Appellant at his vehicle,

Appellant's cousin Connie came outside a nearby house and asked if Appellant

was going to jail. Trooper Large testified as to his conversation with the cousin as

follows:

Q.     And, and she asked you whether or not he was going to jail didn't she?

A.     Yes.

Q.     And what did you tell her at that point?

A.     At that point that he wasn't going to jail, that I would still need to do more field sobriety.  Uh, that was after I got him out and stuff that I said that he was on the borderline at that point without even doing anymore field sobriety if he would be under arrest or not, but at that point he was still kind and cooperative and stuff and so he…inaudible…going to jail.

Q.     So just to be clear you hadn't made your mind up yet whether or not even to arrest Mr. Jarrell, isn't that true?

A.     Yes, that's correct.

Q.     And even if you effectuated an arrest of Mr. Jarrell don't you have the option of either releasing into the care and custody of a family member or taking him to jail?

A.     That is correct.

Q.     And, and you can, you can choose whether or not to do that?

A.     Yes.  No matter, it's up to me uh, when people are arrested for OVI or people call it DUI, it's a misdemeanor of the first degree, it's a jailable offense.  Uh, a lot of times when I arrest people for that it all depends on their cooperation and how they act and their attitude and stuff like that or their, their point of intoxication if it's even safe for them to be around other people or possibly they could get back to the vehicle still at that point they would be incarcerated for that reason. And if not, a lot of times even if you get arrested for OVI and after the paperwork's done, all of that stuff, we have a family member or a friend come and get the person and take care of them for the rest of the…inaudible…

Q.     Okay.  And so you've got two different decisions to make there, isn't that right?  You've got one decision to make on whether or not to arrest him and then you've got a separate decision to make as to whether or not to incarcerate him?

A.     Yes.

* * *

Q.     Okay.  So when you're talking to his cousin at this point you're talking to her about both decisions aren't you?

A.     Yes.

Q.     And when you speak with her and you tell her that he's borderline, that you haven't done the field sobriety yet, which decision are you talking about?  The decision to arrest him or the decision to release him?

A.     Arrest him.

**{¶41}**  Trooper Large's testimony that Appellant was "on the borderline even before doing any field sobriety," is irrelevant, given that there was reason to believe Appellant was operating his vehicle while impaired.  Before an officer may order an individual to perform field sobriety tests, he or she must have a reasonable, articulable suspicion that the individual was operating a motor vehicle while under the influence of alcohol. *See Columbus v. Anderson ,* 74 Ohio App.3d 768, 600 N.E.2d 712, (10th Dist.1991), citing *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988).  In *State v. Coates,* 4th Dist. Athens No. 01CA21, 2002-Ohio-2160, *5, we cited *State v. Evans ,* 127 Ohio App.3d 56, 711 N.E.2d 761, (11th Dist.1998), fn. 2, wherein the Eleventh District Court of Appeals noted

several factors indicating operation of a motor vehicle under the influence of

alcohol that a court should consider when reviewing the totality of the

circumstances surrounding an officer's decision to administer field sobriety tests.

The Eleventh Appellate District noted the following factors, with no single one

being determinative of this issue:

> "(1) the time and day of the stop (Friday or Saturday night as opposed
> to, e.g., Tuesday morning); (2) the location of the stop (whether near
> establishments selling alcohol); (3) any indicia of erratic driving
> before the stop that may indicate a lack of coordination (speeding,
> weaving, unusual braking, etc.); (4) whether there is a cognizable
> report that the driver may be intoxicated; (5) the condition of the
> suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the
> suspect's ability to speak (slurred speech, overly deliberate speech,
> etc.); (7) the odor of alcohol coming from the interior of the car, or,
> more significantly, on the suspect's person or breath; (8) the intensity
> of that odor, as described by the officer ("very strong," "strong,"
> "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent,
> uncooperative, etc.); (10) any actions by the suspect after the stop that
> might indicate a lack of coordination (dropping keys, falling over,
> fumbling for a wallet, etc.); and (11) the suspect's admission of
> alcohol consumption, the number of drinks had, and the amount of
> time in which they were consumed, if given. *Id*."

{¶42} Here, we do not find the Trooper's cross-examination testimony

about Appellant's possible BAC level of .156 affected the outcome of the

proceeding.  Appellant's case is unlike that in *Zamorski*, where the evidence was

equally balanced and the improper testimony upset the balance and affected the

outcome of an otherwise close case.  Appellant exhibited many of the above

factors indicating impairment.  For example, Appellant exhibited erratic driving

which included failing to use his turn signal and traveling left of center, which the video demonstrates happened for an extended period of time. Appellant was stopped in the late evening of October 7, 2014. Trooper Large testified a strong odor of an alcoholic beverage "poured" out of the vehicle and Appellant was traveling alone. When Appellant was removed from the vehicle, a strong odor was on Appellant's person. Trooper Large also testified Appellant's speech was slurred and Appellant stumbled and swayed.

{¶43} Trooper Large also testified he had to repeat the directions for the HGN test, the PBT, and the BAC later, multiple times. He considered Appellant's inability to understand and follow the directions to be another indicator of impairment. This is corroborated, in part, on the video.

{¶44} Appellant also makes much of Patrolman Adkins' testimony, on cross-examination, when he admitted he spent approximately 20 minutes in the same small room with Appellant and Trooper Large and they were in close proximity. Patrolman Adkins admitted he did not observe signs of impairment, such as staggering, lack of coordination, and falling. However, on redirect, Patrolman Adkins also advised he was not the investigating officer that night and he did not look into Appellant's eyes. He did notice a strong odor of alcohol coming from Appellant.

{¶45} We are mindful that an appellate court must bear in mind the factfinder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. *State v. Watts,* 3rd Dist. Hancock No. 12-5-34, 2016-Ohio-257, ¶ 55; *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5612, ¶ 125. *See State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212, (1967), paragraph one of the syllabus. The jury was in the best position to evaluate the testimony of Trooper Large and Patrolman Adkins. In addition, the jury viewed the video recording of the stop which corroborated much of the testimony and also revealed Appellant's demeanor which changed from cooperative to belligerent, which is also a factor compiled on the *Evans* list.

{¶46} For the foregoing reasons, we find the admission of Trooper Large's cross-examination testimony regarding Appellant's possible BAC level of .156 did not rise to the level of plain error. We cannot say that there exists a reasonable probability that the alleged error resulted in prejudice to Appellant and affected the outcome of his trial. While Trooper Large used the term "borderline," and Patrolman Adkins testified to noticing only a "strong odor" of alcohol emanating from Appellant's person, as in *Mullins*, there was sufficient other evidence upon which Appellant was convicted.

{¶47} Appellant also argues he was rendered ineffective assistance of counsel, given the importance of the alleged blood alcohol numerical value to the

outcome of the OVI case. The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 14. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, (1984); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, (1970); *State v. Creech*, 188 Ohio App.3d 513, 2010-Ohio-2553, 936 N.E.2d 79, ¶ 39 (4th Dist.).

{¶48} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, (1984); *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85; *Jenkins, supra,* at ¶ 15. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848

N.E.2d 810, ¶ 95 (citations omitted); *accord State v. Wesson,* 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81.

{¶49} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689; *Jenkins, supra*, at ¶ 16. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, *citing State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶50} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. Short,* 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. White,* 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998)*; State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph

three of the syllabus; *Jenkins, supra,* at ¶ 17.  Furthermore, courts may not simply

assume the existence of prejudice, but must require the defendant to affirmatively

establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707,

¶ 22; *State v. Tucker,* 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002).

{¶51}  To show plain error, an accused is required to demonstrate a

reasonable probability that the error resulted in prejudice–the same deferential

standard for reviewing ineffective assistance of counsel claims. *United States v.*

*Dominguez Benitez,* 542 U.S. 74, 81-83, 124 S.Ct. 2333 (2004) (construing

Fed.R.Crim.P. 52(b), the federal analog to Crim.R. 52(B), and also noting that the

burden of proving entitlement to relief for plain error "should not be too easy").

The existence of plain error satisfies the prejudice prong of the test for ineffective

assistance of counsel. *State v. Mohamed,* 8th Dist. Cuyahoga No. 102398, 103602,

2016-Ohio-1116, ¶ 37.  In the case sub judice, we have found no plain error.

"Failure to establish either element is fatal to [an ineffective assistance] claim."

*State v. Jones,* 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14.  Therefore, if

one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87

Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to

satisfy one of the elements "negates a court's need to consider the other").

Therefore, we need not consider Appellant's ineffective assistance claim.

{¶52}  Moreover, we cannot say that Appellant's counsel's elicitation of the

testimony of the .156 BAC reading on cross-examination should not be construed

as part of a reasonable trial strategy to challenge the  functionality of the

DataMaster machine.  Counsel questioned Patrolman Adkins vigorously regarding

his calibration checks of the machine, emphasizing that the machine was supposed

to be calibrated every 7 days and the last time it had been calibrated prior to

Appellant's test Patrolman Adkins admitted the machine failed to produce a

reading in the week prior.

{¶53}  Furthermore, defense counsel repeated the .156 numerical value

within a line of questioning apparently undertaken to call into doubt the

functionality of the breath test machine.  After counsel elicited the trooper's

testimony regarding the .156 result, counsel repeated the number and the trooper's

testimony continued as follows:

Q.    Okay.  But it, it never gave a value of .156 in its results did it?

A.    No.

Q.    It didn't show anything other than zero on any of those result slips did it?

A.    That's correct.  It was an invalid sample.

Q.    Okay.  So after you got these multiple invalid samples what kind of testing
did you do to make sure that the machine was working right?

A.    I didn't, I don't test that machine at all.

Q.    Okay.  And we've already gotten testimony that the machine had not been
used in at least a week and maybe longer, we don't know, but we've seen records
for a week, right?

A.      Yes, all of the records are there.

Q.      So did anyone blow into the machine that night to see if it worked?

A.      I, I have no idea.

Q.      Did, did you blow in?

A.      No.

Q.      Um, did Patrolman Adkins blow in?

A.      No.

Q.      Okay.  So you're just assuming that the machine worked?

* * *

{¶54}  Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State v. Doss,* 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 5, quoting *State ex rel. Kline v. Carroll,* 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27; *State ex rel. v. Cos. v. Marshall,* 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998).  The doctrine precludes a defendant from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *Doss* at ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003).  The doctrine applies when defense counsel is "actively responsible" for the trial court's error. *State v. Campbell,* 90 Ohio St.3d 320, 324, 2000-Ohio-183, 738 N.E.2d 1178.  Furthermore, in *Jenkins, supra,* at fn. 2, we

observed that some courts refuse to recognize an ineffective assistance of counsel claim when the allegation is that trial counsel invited the alleged error.[3]  However, as in *Jenkins*, we also resolve Appellant's claim regarding ineffective assistance on the basis that he has failed to show material prejudice affecting the outcome of his trial.  " '[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.' " *State v. Teitelbaum,* 2016-Ohio-3524, - -N.E. 3d - -, ¶113; *State v. Roy,* 10th Dist. No. 14AP–223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson,* 10th Dist. No. 05AP– 13, 2006-Ohio-2440, ¶ 51. *See also State v. Murphy*, 91 Ohio St. 3d 516, 540, 2001-Ohio-112, 747 N.E.2d 765.

{¶54}  For the foregoing reasons, we find no merit to Appellant's sole assignment of error.  As such, we overrule the assigned error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

---

[3] In *Jenkins,* we explained: The Eighth District Court of Appeals explained the rationale as follows:
"[T]o allow such a claim, where counsel induced the error, would defeat the purpose of the invited error doctrine: '[C]onsidering an ineffective assistance of counsel claim brought about as a result of invited error would necessarily vitiate our ruling on invited error.  There is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error.' *State v. West*, 8th Dist. Nos. 97391 and 97900, 2013-Ohio-96, ¶ 27, quoting *Doss,* 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 9. Regardless, invited error involves the exercise of trial strategy, and courts have consistently held that an appellate court 'will not question matters of trial strategy.' *Id.*" *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 35.
In the case at bar, we do not deem it necessary to consider the merits of this rationale.  Instead, we can dispose of appellant's ineffective assistance of counsel claim due to the lack of prejudice.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:     Concurs in Judgment and Opinion.
Hoover, J.:   Concurs in Judgment Only.

For the Court,


BY: _____
Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**