DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Charles Dustin Ozeta appeals his conviction and sentence by the Adams County Court of Common Pleas for two counts of trafficking in morphine, fourth-degree felonies in violation of R.C. 2925.03(A)(1). The trial court sentenced appellant to two terms of one and one-half years imprisonment, each, to be served consecutively.
 {¶ 2} Appellant presents three arguments with respect to the alleged errors in the jury trial and sentence. First, he argues that the method by which the trial court selected the jury did not comply with Crim.R. 24. Second, appellant asserts that the trial court erred by sentencing appellant to the maximum term on each count and imposing the terms consecutively. Third, appellant argues that the jury's verdict was against the manifest weight of the evidence.
 {¶ 3} We agree that the trial court erred by imposing maximum consecutive sentences. However, we find appellant's other arguments to be without merit. Therefore, we reverse the trial court's judgment with respect to appellant's sentences and remand for further proceedings.
 Facts and Proceedings Below {¶ 4} On June 27, 2001, Detective Jeff McCarty of the Adams County Sheriff's Office learned through John Conley, a confidential informant, that appellant was trafficking in morphine. McCarty discussed the circumstances surrounding John Conley's knowledge of appellant's morphine business. Conley, the father of appellant's ex-girlfriend, told McCarty that appellant approached him about selling him some morphine tablets. Based on this, McCarty worked with Conley to set up a controlled purchase from appellant.
 {¶ 5} McCarty searched Conley's person, as well as that of Conley's wife, Jacquelyn, who was also present during the controlled purchase. McCarty also searched the vehicle that the Conleys were driving to the purchase location. It is standard procedure to search a confidential informant before a controlled purchase in order to maintain the integrity of that purchase. McCarty also equipped Conley with a hidden microphone to transmit the transaction to a receiver and record it to an audio tape. Lastly, McCarty supplied Conley with $100 with which to purchase the morphine.
 {¶ 6} Just after midnight, the Conleys arrived at the West Union Speedway service station while Detective McCarty closely watched from an unmarked cruiser. As Conley pulled into the lot, appellant motioned for him to pull into a neighboring lot. Conley did and appellant sold them three and one-half tablets of "oromorph," a synthetic morphine, for $100. Following the transaction, McCarty followed Conley to an unnamed lot where McCarty collected the tablets from Conley. McCarty also searched Conley, Jacquelyn, and the vehicle once again, and then sent them on their way.
 {¶ 7} McCarty sealed the three and one-half pills in an evidence bag and sent it to the Bureau of Criminal Identification and Investigation (BCI) for testing. The test results revealed that, in fact, the pills contained morphine.
 {¶ 8} On July 15, 2001, John Conley contacted McCarty a second time. Conley told McCarty that appellant once again propositioned to sell him morphine. This time, Detective Mark Kendall of the Adams County Sheriff's Office participated in a second controlled purchase with Detective McCarty involving appellant. The second controlled purchase also involved John and Jacquelyn Conley as confidential informants.
 {¶ 9} Prior to the purchase, the detectives searched the Conleys and their vehicle. Kendall also equipped John Conley with a microphone. The detectives supplied the Conleys with $100 for the purchase. At around 6:25 p.m., the Conleys approached the West Union Speedway and purchased three oromorph tablets from appellant. The detectives witnessed the transaction from their unmarked cruiser, and also listened to it through the transmitter. Once again, the transaction was recorded to an audio tape.
 {¶ 10} After the second purchase, the detectives met with the Conleys, searched them and their vehicle, and recovered the three oromorph tablets. The tablets were sent to BCI for testing. The test results were positive for morphine.
 {¶ 11} On April 8, 2002, appellant was indicted on two counts of trafficking in morphine, fourth-degree felonies in violation of R.C.2925.03(A)(1). The matter came on for a jury trial on July 1, 2002. The state presented the testimony of Detective McCarty, Detective Kendall, and John Conley. Also, the state presented the tape recordings from each of the controlled purchases involving appellant. Upon hearing all the evidence, the jury returned a guilty verdict as to each count. On July 18, 2002, the trial court sentenced appellant to two terms of one and one-half years of imprisonment, to be served consecutively.
 The Appeal {¶ 12} Appellant timely filed an appeal and presents this Court with the following assignments of error:
 {¶ 13} First Assignment of Error: "The trial court erred as a matter of law and abuse of discretion, both to the prejudice of defendant during jury selection by the method of selection required."
 {¶ 14} Second Assignment of Error: "The trial court erred as a matter of law and abuse of discretion by sentencing appellant to the maximum term on each count and then running them consecutive."
 {¶ 15} Third Assignment of Error: "The jury's verdict was against the weight of the evidence where the search of the confidential informant was defective."
 {¶ 16} Fourth Assignment of Error: "Counsel represents that she can find no other error present in the record and requests this Court to independently review the record for any such error."
 {¶ 17} We will address these errors in an order more conducive to our analysis.
1. Fourth Assignment of Error
 {¶ 18} In his Fourth Assignment of Error, appellant's attorney requests this Court to independently review the record for any errors that she missed. App.R. 16(A)(3) requires the appellant, in his brief, to provide a "statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." Further, App.R. 12(A)(2) allows a reviewing court to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." Just as it is not the reviewing court's obligation to search the record for evidence to support an appellant's argument as to any alleged error, State v. McGuire (Dec. 14, 1994), 9th Dist. Nos. 16423 and 16431, it is not an appellate court's responsibility to search the record for any errors that appellant may have overlooked. Because appellant's Fourth Assignment of Error has failed to identify an error in the record as mandated by App.R. 16(A)(3), we will disregard it pursuant to App.R. 12(A)(2).
2. First Assignment of Error
 {¶ 19} In his First Assignment of Error, appellant argues that the trial court's method of selecting the jury did not comply with Crim.R. 24. Specifically, appellant argues that the trial court violated Crim.R. 24 by requiring the parties to pass for cause on the entire jury pool and then exercise peremptory challenges while the jury pool was outside the courtroom. We disagree.
 {¶ 20} With respect to peremptory challenges, Crim.R. 24 states: "Peremptory challenges may be exercised after the minimum number of jurors allowed by the Rules of Criminal Procedure has been passed for cause and seated on the panel. Peremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge. If all parties, alternately and in sequence, fail to exercise a peremptory challenge, the joint failure constitutes a waiver of all peremptory challenges. A prospective juror peremptorily challenged by either party shall be excused and another juror shall be called who shall take the place of the juror excused and be sworn and examined as other jurors. The other party, if that party has peremptory challenges remaining, shall be entitled to challenge any juror then seated on the panel." Crim.R. 24(D).
 {¶ 21} Appellant has not argued that he was denied the right to exercise peremptory challenges. Rather, he argues that the method by which the peremptory challenges were exercised violated Crim.R. 24(D). In the case sub judice, the entire jury pool was called into the courtroom and given an oath or affirmation. The trial court then addressed the venire. Following that, each attorney was given the opportunity to examine the entire jury pool for cause. Each party conducted voir dire, and several out of the venire were excused for cause. Then, the remaining jury pool was excused into the hallway. In their absence, the parties exercised peremptory challenges. Thirteen jurors were eventually seated to act as the jury and one alternate.
 {¶ 22} It is a well-settled rule that "the selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." State v.Trummer (1996), 114 Ohio App.3d 456, 461, 683 N.E.2d 392; see, also, Berkv. Matthews (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301. Further, the trial court has discretion over the scope, length, and manner of voir dire. State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, at ¶ 46.
 {¶ 23} Recently, the Supreme Court of Ohio held that "Crim.R. 24 and R.C. 2945.27 afford both prosecution and defense counsel the opportunity to conduct reasonable voir dire of prospective jurors. Nevertheless, the length and scope of voir dire fall within a trial court's sound discretion and vary depending on the circumstances of a given case. State v. Lundgren , 73 Ohio St.3d 474, 481, [1995-Ohio-227,] 653 N.E.2d 304. Accordingly, we will not find prejudicial error in how the trial court qualified venirepersons `as fair and impartial jurors' unless the appellant can show `a clear abuse of discretion.' State v. Cornwell , 86 Ohio St.3d 560, 565, [1999-Ohio-125,] 715 N.E.2d 1144; see, also, State v. Beuke (1988),38 Ohio St.3d 29, 39, 526 N.E.2d 274." State v. LaMar, 95 Ohio St.3d 181,2002-Ohio-2128, 767 N.E.2d 166, at ¶ 40. Furthermore, the manner in which peremptory challenges are exercised is generally a matter of local custom and is traditionally left to the sound discretion of the trial court. State v. Larkins, 6th Dist. No. H-01-052, 2003-Ohio-309, at ¶ 18. A trial court does not abuse its discretion unless it acts arbitrarily, unreasonably, or unconscionably. State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 24} We note that the manner in which the voir dire was conducted in the case sub judice did not follow the exact wording of Crim.R. 24. However, we do not find that the trial judge abused his discretion in conducting the voir dire or peremptory challenges in this way. InLarkins, the issue was whether the trial court abused its discretion where it required the parties to exercise their peremptory challenges at the same time, instead of alternatively as required by Crim.R. 24. Statev. Larkins, 2003-Ohio-309, at ¶ 16-17. That court found that the trial court did not abuse its discretion, even though the trial court did not comply with the exact wording of Crim.R. 24. Id. at ¶ 18. Likewise, while the trial court, in the case sub judice, did not follow the exact procedure set forth in Crim.R. 24, we cannot say that this deviation from the prescribed method for conducting voir dire and peremptory challenges constitutes an abuse of discretion.
 {¶ 25} Appellant's First Assignment of Error is overruled.
3. Third Assignment of Error
 {¶ 26} In his Third Assignment of Error, appellant argues that the jury's guilty verdicts were against the manifest weight of the evidence. Appellant contends that the controlled purchases were tainted because the detectives did not thoroughly search the confidential informants both prior to and after the purchases. Appellant points to the testimony of each detective, which showed that the search of the Conleys lasted no more than "a few minutes." From this, appellant asserts that the weight of the evidence did not show that John and Jacquelyn Conley were "clean" of drugs and money when they met with appellant on both occasions. He also suggests that the Conleys harbored ill will against appellant due to his troubled relationship with their daughter. Thus, he asserts that the jury lost its way in finding him guilty on each count. We disagree.
 {¶ 27} A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the conviction than not. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus; State v.Smith, 80 Ohio St.3d 89, 113-114, 1997-Ohio-355, 684 N.E.2d 668, certiorari denied (1998), 523 U.S. 1125, 118 S.Ct. 1811. A reviewing court must grant a new trial only in an exceptional case where the evidence weighs heavily against conviction. State v. Thompkins,78 Ohio St.3d at 387.
 {¶ 28} Upon a review of all of the evidence, we find that, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, the jury did not lose its way, a manifest miscarriage of justice did not occur, and that appellant's convictions are not contrary to the manifest weight of the evidence. Not only did the prosecution offer three eye witnesses to appellant's morphine transactions, but they also presented the jury with two audio recordings of appellant engaging in the sale of morphine. Further, while appellant attempted to discredit John Conley's testimony by creating the inference that he was biased against appellant, the jury chose not to believe that inference and neither do we. A rational jury could reasonably find that appellant was engaged in the trafficking of morphine.
 {¶ 29} Accordingly, appellant's Third Assignment of Error is overruled.
4. Second Assignment of Error
 {¶ 30} In his Second Assignment of Error, appellant argues that the trial court erred by sentencing him to consecutive maximum terms of imprisonment, absent sufficient findings in the record to support such a sentence. Appellant asserts that the record does not support the imposition of either maximum, or consecutive, terms. We will examine each issue separately.
A. Standard of Review
 {¶ 31} An appellate court "will not overturn the trial court's sentence unless the court `clearly and convincingly' finds that: (1) the sentence is not supported by the record; (2) the trial court imposed a prison sentence without following the appropriate statutory procedures; or (3) the sentence imposed was contrary to law. See R.C. 2953.08(G)(2);State v. McCain, Pickaway App. No. 01CA22, 2002-Ohio-5342." State v.Steward, Washington App. No. 02CA43, 2003-Ohio-4082, at ¶ 13. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469,120 N.E.2d 118, paragraph three of the syllabus.
B. Maximum Sentences
 {¶ 32} Trial courts presume the shortest authorized prison term is appropriate if the offender has not previously served a prison term. R.C.2929.14(B). See, also, State v. Edmonson, 86 Ohio St.3d 324, 325,1999-Ohio-110, 715 N.E.2d 131. R.C. 2929.14(B)(2) provides an exception to that presumption, allowing the trial court to impose a longer sentence if it finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime. However, "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." State v. Edmonson,
86 Ohio St.3d at syllabus. While it is not required to state its reasons for imposing greater than the minimum term, the record must reflect that the trial court engaged in the analysis under R.C. 2929.14(B) and that it "found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." State v.Edmonson, 86 Ohio St.3d at 326.
 {¶ 33} In the sentencing entry, the trial court explicitly stated that "the shortest prison term will demean the seriousness of the defendant's conduct; and the shortest prison term will not adequately protect the public from future crime by the defendant or others." Accordingly, the trial court accurately complied with the requirements of R.C. 2929.14(B). The issue, then, is whether the trial court made the necessary findings to impose the maximum sentence for each count.
 {¶ 34} Courts are limited in their authority to impose the maximum prison term. R.C. 2929.14(C). In fact, maximum sentences are retained only for certain offenders that meet very specific criteria outlined in the sentencing statutes. R.C. 2929.14(C) allows a court to impose the maximum sentence only when the offender fits one of the following delineated categories: (1) the offender committed the worst form of the offense; (2) the offender poses the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. However, pursuant to R.C. 2929.19(B)(2)(d), when imposing a maximum sentence, the trial court must not only find that one of the above applies, but also set forth its reasons on the record for that finding.
 {¶ 35} In its sentencing entry the court stated the following: "The court notes for the record the defendant has previous felony convictions for breaking entering in juvenile court in 1994, and grand theft in common pleas court in 1997. He also has a conviction for attempted escape in Scioto County Common Pleas Court in 2001. He admits to a long standing involvement with drugs and alcohol, and has not completed previously ordered counseling for those problems, nor has he recognized the pattern of drug abuse related to this offense. Mr. Ozeta was on probation at the time of this offense and has not responded favorable [sic] to sanctions previously imposed for criminal convictions. The court therefore finds that the defendant has committed the worst form of the offense and that consecutive sentences are necessary to protect the public from future crime and to punish the defendant and are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public."
 {¶ 36} From this soliloquy, the court found that appellant committed the worst form of the offense pursuant to R.C. 2929.14(C). However, the court failed to specify reasons for this finding. Simply citing to appellant's criminal history does not support that he committed the worst form of the offense. In fact, an offender's criminal history is not relevant to the severity of the offenses he was charged with. Therefore, those reasons do not adequately support the court's finding that he committed the worst form of trafficking in drugs. The trial court made no mention of reasons why it found that appellant's offenses in this instance constituted the "worst form." Because the trial court explicitly failed to state its reasons for imposing the maximum sentences on the record, we find the trial court's imposition of the maximum sentence as to each count to be inappropriate.
C. Consecutive Sentences
 {¶ 37} In general, when sentencing an offender for multiple offenses, trial courts must impose concurrent, rather than consecutive, prison sentences. R.C. 2929.41(A). A court may impose consecutive sentences when it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following: (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense. (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct. (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4).
 {¶ 38} The analysis under R.C. 2929.14(E)(4) involves three steps. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender"; second, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and the danger he poses"; and third, the court must find that one of the enumerated circumstances in R.C. 2929.14(E)(4)(a)-(c) exists. State v.Haugh, Washington App. No. 00CA18, 2001-Ohio-2426; State v. Steward,
supra. "The verb `finds,' as used in R.C. 2929.14(E)(4), means that the court `must note that it engaged in the analysis' required by the statute." State v. Steward, 2003-Ohio-4082, at ¶ 30.
 {¶ 39} Moreover, R.C. 2929.19(B)(2)(c) requires that the trial court make a finding that gives its reasons for imposing consecutive sentences. This requirement is "separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4)." State v. Steward,
2003-Ohio-4082, at ¶ 31. Therefore, after making the required findings under the three-step inquiry of R.C. 2929.14(E), the trial court must "justify those findings by identifying specific reasons supporting the imposition of consecutive prison terms." Id; see, also, State v.Brice (Mar. 29, 2000), Lawrence App. No. 98CA24.
 {¶ 40} In the case sub judice, the court stated that "The court therefore finds that the defendant has committed the worst form of the offense and that consecutive sentences are necessary to protect the public from future crime and to punish the defendant and are not disproportionate to the seriousness of the defendant's conduct and to the danger he poses to the public." The court also noted that appellant was on probation at the time of his offenses. Therefore, the court made the requisite findings under R.C. 2929.14(E)(4). However, the trial court failed to adequately support these findings with reasons that justify the imposition of consecutive sentences.
 {¶ 41} First, we note that the imposition of consecutive sentences is confined to greater restrictions than that of maximum sentences. Statev. Steward, 2003-Ohio-4082, at ¶ 34, citing State v. DeAmiches (Mar. 1, 2001), Cuyahoga App. No. 77609. The DeAmiches Court stated that "[w]hile R.C. 2929.14(C) essentially allows a maximum term upon a finding that either the punishment or public protection purposes of R.C. 2929.11
will be served thereby, the imposition of consecutive sentences must be analyzed with respect to both purposes." Therefore, while the court can impose the sentences for either purpose, it must find that the consecutive sentences are not disproportionate with respect to both purposes. State v. DeAmiches, supra.
 {¶ 42} In its sentencing entry, the trial court attempted to justify the imposition of consecutive sentences by citing to appellant's criminal history and propensity for drug and alcohol related behavior. In the first step of the R.C. 2929.14(E) analysis, the court found that consecutive sentences were necessary to protect the public from future crime and to the punish appellant. Of all the reasons listed by the trial court, we find that none of those specifically support the court's finding under step one. While the imposition of consecutive sentences no doubt punishes appellant more than concurrent sentences, we find that running the sentences consecutively is not necessary to punish appellant based on the reasons cited by the trial court. In short, concurrent sentences would adequately punish appellant for his offenses. Likewise, the reasons cited by the court do not support that consecutive sentences are necessary to protect the public. The record is devoid of facts that suggest the public would not be adequately protected by concurrent sentences.
 {¶ 43} In the second step of the R.C. 2929.14(E) analysis, the trial court found that consecutive sentences are not disproportionate to the seriousness of appellant's conduct. Again, the sentencing entry fails to cite to factors describing the seriousness of appellant's conduct. Without that as a starting point, the sentencing court cannot merely issue a blanket statement that consecutive sentences are not disproportionate to the seriousness of appellant's conduct. The trial court is required to supply reasons for the proportionality of the sentence to an offender's conduct. Here, the trial court failed to do so. Thus, the imposition of consecutive sentences is unsupported by the record.
 {¶ 44} Appellant's Second Assignment of Error is sustained with respect to both the maximum and consecutive sentences imposed.
 Conclusion {¶ 45} We find no error with the manner in which the trial court conducted voir dire, and that the manifest weight of the evidence supports the jury's guilty verdict. Accordingly, appellant's First and Third Assignments of Error are not well-taken. Further, appellant's Fourth Assignment of Error is disregarded. However, the trial court's imposition of both the maximum and consecutive sentences on each count is unsupported by the record. Therefore, appellant's Second Assignment of Error is sustained. We remand for further proceedings not inconsistent with this opinion.
Judgment affirmed in part, reversed in part, and remanded.
Harsha, J., and Abele, J.: Concur in Judgment Only.