[Cite as *State v. McKenzie*, 2021-Ohio-536.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,           :

                    :   Case No.:  19CA3892

    Plaintiff-Appellee,   :           19CA3893

                    :

    v.                  :   <u>DECISION AND JUDGMENT</u>

                    :   <u>ENTRY</u>

WILLARD MCKENZIE,   :

                    :   **RELEASED: 02/23/2021**

    Defendant-Appellant.  :

_____

<u>APPEARANCES:</u>

Karyn Justice, Portsmouth, Ohio, for Appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, for Appellee.
_____

Wilkin, J.

**{¶1}** This is an appeal from a Scioto County Court of Common Pleas judgment entry of conviction of Appellant, Willard McKenzie, for two counts of felonious assault in violation of R.C. 2903.11(A)(2) and R.C. 2903.11(D)(1)(a), both second-degree felonies; and two counts of inducing panic in violation of R.C. 2917.31(A)(2) and R.C. 2917.31(C)(4)(a), both fifth-degree felonies. Appellant asserts the following two assignments of error: (1) Appellant's criminal convictions for felonious assault were against the manifest weight of the evidence, and (2) Appellant's counsel rendered ineffective assistance of counsel. After our review of the record and the applicable law, we affirm the trial court's judgment of conviction.

BACKGROUND

{¶2} On May 18, 2017, the State charged Appellant with violating a protection order in case 17-CRB-0267 in violation of R.C. 2919.27(A)(2) and (B)(3) ("*McKenzie* I").  Appellant moved for a competency examination, which the trial court granted on October 31, 2017.  On February 27, 2018, the trial court held a hearing in which the Appellant indicated that he would plead guilty to violating the protection order.  The parties then stipulated that, pursuant to the competency report, Appellant was competent for purposes of understanding the pending charge and that he did not qualify for a not-guilty-by-reason-of-insanity ("NGRI") defense.  The trial court then proceeded to inform Appellant of the rights he was waiving and that the offense was a fifth-degree felony that could result in a maximum sentence of twelve months in prison and a $2,500 fine. Ultimately, the trial court accepted Appellant's guilty plea and set sentencing for May 2, 2018.

{¶3} On April 30, 2018, the State filed a motion to revoke Appellant's bond due to the fact he "was in a stand-off with law enforcement which involved a firearm," which the trial court granted. Consequently, the State filed new criminal charges against Appellant alleging that, on April 27, 2018, he committed two counts of felonious assault by knowingly causing or attempting to cause physical harm to Carl Keller and his son B.K. (a minor) by means of a deadly weapon, and two counts of inducing panic by causing the evacuation of a public place or causing serious public inconvenience or alarm by threatening to commit an offense of violence that resulted in economic harm. ("*McKenzie* II") On May 2,

2018, the Court continued the sentencing hearing in *McKenzie* I, and set a new bond amount of $500,000, based on the new charges.

{¶4} On July 27, 2018, Appellant moved for a competency examination, which the trial court granted, and a notice of intent to use a NGRI defense. On October 16, 2018, after reviewing the record and the competency report, the trial court found Appellant was not competent to stand trial, and ordered him placed with Summit Behavioral Healthcare in an attempt to restore his competency.

{¶5} On May 31, 2019, the trial court held a hearing in which the parties stipulated that Appellant was restored to competency regarding the pending charges in *McKenzie* II based on a report prepared by Summit Behavior Healthcare. The trial court issued an entry finding that Appellant's competency had been restored, and set a pretrial hearing for June 7, 2019.

{¶6} On June 7, 2019, Appellant filed a motion for an evaluation of his sanity at the time of the alleged offenses, which the trial court granted. On July 12, 2019, Psychologist, Dr. Erin Nichting, issued a report concluding that while Appellant did suffer from a "serious mental disease" at the time of the shooting, he nevertheless understood that his action of shooting the gun was wrong, so the Doctor opined that a NGRI defense was not supported. Nevertheless, on August 12, 2019, Appellant filed a motion notifying the trial court that he would pursue both a "not guilty defense as well as a [NGRI] defense."

{¶7} After a two-day trial in September 2019, the jury returned a verdict finding Appellant guilty on both counts of felonious assault and both counts of inducing panic. For purposes of sentencing, the trial court merged both counts of

inducing panic with the two counts of felonious assault, and sentenced Appellant to four years in prison on each assault count to be served consecutive to each other, and consecutive to a one-year prison sentence in *McKenzie* I for violating the civil protection order, for an aggregate sentence of nine years in prison.  It is from this judgment that Appellant appeals, asserting two assignments of error.

ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE

{¶8} In his first assignment of error, Appellant alleges that his convictions for felonious assault are against the manifest weight of the evidence.  More specifically, Appellant argues the offense of felonious assault requires the State to prove beyond a reasonable doubt that he knowingly caused or attempted to cause physical harm to Carl Keller and his son, B.K., on the day of the shooting. Appellant argues that knowingly requires a mental state that one ought to know one's actions will "probably cause certain results."  He claims that the "record supports [his] testimony that he did not aim (the gun) at anyone and shot into an open field."  Therefore, he argues, because he did not knowingly attempt to cause harm to anyone, the jury lost its way, and its verdict is against the manifest weight of the evidence.

{¶9} In response, the State argues that witnesses testified that Appellant initially pointed the gun at his head, but then pointed it sideways and fired several shots, which were fired in the general direction of Carl Keller and his son, B.K., to the extent that Keller testified that he heard the bullets "whistle" by him and his son, B.K.  The State also alleges that another neighbor testified that prior to the

shooting "[Appellant] was threatening to kill everyone.  He returned to the house and came back outside with a gun and was firing it towards my house and the neighbors."   Accordingly, the State argues that the jury did not lose its way in convicting Appellant of felonious assault.  Consequently, it argues that this court should overrule Appellant's first assignment of error.

LAW

**{¶10}** In determining whether a defendant's conviction is against the manifest weight of the evidence, the reviewing court must examine "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *State v. Anderson*, 4th Dist. Washington No. 03CA3, 2004-Ohio-1033, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  "In reviewing the evidence, we must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and the weight to be given to the evidence."  *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  This is because "[t]he fact finder 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Picklesimer*, 4th Dist. Pickaway No. 14CA17, 2015-Ohio-1965, ¶9, quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  As a result, even when "conflicting evidence is presented at

trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the testimony presented by the state." *State v. Harper*, 4th Dist. Lawrence No. 14CA19, 2015-Ohio-671, ¶ 12, citing *State v. Tyson,* 4th Dist. Ross No. 12CA3343, 2013-Ohio-3540, ¶ 21. "The jury can simply reject the defendant's defense and find the evidence in the state's case-in-chief more persuasive." *Id.* Accordingly, "[a] reviewing court should not disturb the fact-finder's resolution of conflicting evidence unless the fact-finder clearly lost its way." *State v. Newman*, 4th Dist. Scioto No. 14CA3658, 2015-Ohio-4283, 45 N.E.3d 624, ¶ 56, citing *State v. Davis,* 4th Dist. Washington No. 09CA28, 2010-Ohio-555, 2010 WL 596976, ¶ 16-17.

{¶11} Appellant was convicted of felonious assault under R.C. 2903.11(A)(2), which provides "No person shall *knowingly* * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." (Emphasis added.)

{¶12} R.C. 2901.22(B) provides:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶13} "[T]o commit an act 'knowingly' requires only that the criminal defendant be aware 'that [the] result is practically certain to follow from his conduct, whatever his desire may be as to that result.' " *State v. Berecz*, 4th Dist.

Washington No. 08CA48, 2010-Ohio-285, ¶ 58, quoting *United States v. Bailey*,

444 U.S. 394, 404, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). "The test for whether

a defendant acted knowingly is a subjective one, but it is decided on objective

criteria." *State v. McDaniel*, 2nd Dist. Montgomery No. 16221, 1998 WL 214606,

*7 (May 1, 1998), citing *State v. Elliott*, 104 Ohio App.3d 812, 821, 663 N.E.2d

412 (10th Dist. 1995) (A "[d]efendant's subjective state of mind may be

determined from reasonable inferences arising from the evidence.")

{¶14} " [A] firearm is an inherently dangerous instrumentality, use of which

is reasonably likely to produce serious injury or death." *State v. Widner*, 69 Ohio

St.2d 267, 270, 431 N.E.2d 1025 (1982), citing *State v. Lockett*, 49 Ohio St.2d

48, 358 N.E.2d 1062 (1976), paragraphs three and four of the syllabus (reversed

on other grounds, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973). "Thus, courts

have often affirmed a finding that the defendant acted knowingly when the

defendant shot a gun in a place where there is a real and substantial risk of injury

to persons." *Berecz*, 4th Dist. Washington No. 08CA48, 2010-Ohio-285, ¶ 58.

Accord *State v. Dixson*, 1st Dist. Hamilton No. C-030227, 2004-Ohio-2575, ¶ 6,

28 ("Firing a gun at a car is evidence of knowingly attempting to harm the car

passengers for purposes of felonious assault.).

ANALYSIS

{¶15} There were several witnesses to the shooting, including Appellant's

Mother, Eunice McKenzie; Appellant's brother-in-law and sister, Nelson Slusher

and Jill Slusher; Appellant's nephew's wife, Leigha Plummer; and neighbors,

Carl Keller and his son, B.K. Statements given by several of these witnesses to

police shortly after the shooting indicated that prior to the shooting Appellant was threatening people. Nelson Slusher told police that "[Appellant] was on the back porch going crazy. Wanting to hurt somebody. After a few minutes he goes in the house and comes out shooting and holding a gun to his head, going to shoot his self." Leigha Plummer told police "[Appellant] was threatening to kill everyone. He returned to the house and came back outside with a gun and was firing towards my house and the neighbors." Even, Appellant's mother, Eunice McKenzie, admitted that Appellant told her "I could kill you now."

{¶16} At trial, Appellant testified that he struggled with mental issues, including depression, and on the day of the shooting, after arguing with his mother, he decided that he "had enough" and "was going to shoot myself." Appellant testified that he retrieved the gun from the house, initially held it to his head, but then pointed the gun away from his head and "I shot all the bullets out." He testified that he did not hold it "sideways," but fired it into an "open area" and did not intend to hurt anyone. Appellant's sister and brother-in-law, Jill Slusher and Nelson Slusher, also testified that Appellant fired the gun upward and that he was not shooting *at* anyone.

{¶17} However, Carl Keller testified that, although Appellant did not aim the gun at anyone in particular, after initially pointing the gun at his head, Appellant pointed the gun "sideways" and fired in the general direction of he and his son, B.K., to the extent that Carl could hear the "whistle of [the bullets] going by." Leigha Plummer also testified that after pointing the gun at his head, Appellant "turned [the gun] sideways and started firing it." (Emphasis added.)

{¶18} Thus, there was testimony presented to the jury that Appellant verbally threatened persons prior to shooting the gun, as well as testimony that Appellant pointed the gun sideways in the general direction of Carl Keller and B.K. It was within the prerogative of the jury to believe this evidence, instead of the testimony indicating that Appellant fired the gun into the air. *Harper*, 4th Dist. Lawrence No. 14CA19, 2015-Ohio-671, ¶ 12. And it was reasonable for the jury to infer from this evidence that Appellant knowingly attempted to harm Carl Keller and B.K. by pointing the gun sideways. *Berecz*, 4th Dist. Washington No. 08CA48, 2010-Ohio-285, ¶ 58. Therefore, because we find that the jury did not clearly lose its way in finding Appellant guilty of felonious assault so as to create a manifest miscarriage of justice that Appellant's convictions must be reversed and a new trial granted, we overrule Appellant's first assignment of error.

## ASSIGNMENT OF ERROR II

## APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

{¶19} Appellant next argues that his trial counsel was ineffective because he failed to object to the admission of Dr. Nichting's report, which addressed Appellant's sanity at the time of the shooting, into evidence without any limiting instruction; thus, opening the door for the State to ask Appellant incriminating questions on cross examination based on the report. Appellant cites R.C. 2945.371(J) in support of this argument. Appellant also argues that his trial counsel effectively abandoned Appellant's "[NGRI] defense by failing to subject Dr. Nichting or her report to rigorous cross examination."

**{¶20}** The State argues that Appellant's strategy was to allow the report into evidence, because, while Dr. Nichting concluded that Appellant understood the wrongfulness of his actions, she also found that Appellant had a "serious mental disease" at the time of the shooting. Consequently, contrary to Appellant's assertion, the State argues that in addition to arguing that the State had failed to prove its case, Appellant's trial counsel also argued that Appellant was NGRI based on Appellant's serious mental disease at the time of the shooting. The State argues that given the facts of the case and Appellant's defense strategy at trial, admission of the report was an objectively reasonable action by Appellant's counsel.

LAW

1.  Ineffective Assistance of Counsel

**{¶21}** "To establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. McCoy*, 4th Dist. Pickaway No. 19CA1, 2020-Ohio-1083, ¶ 28, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). " 'Failure to establish either element is fatal to the claim.' " *State v. Book*, 4th Dist. Ross No. 09CA3107, 2009-Ohio-6168, ¶ 11, quoting *In re B.C.S.,* Washington App. No. 07CA60, 2008-Ohio-5771, at ¶ 16, citing *Strickland* at 687. **"**To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Jarrell*, 4th Dist. Gallia No. 15CA8, 2017-Ohio-520, 85 N.E.3d

175, ¶ 48, citing *State v. Conway* 109 Ohio St.3d 412, 2006-Ohio-2815, 848

N.E.2d 810, ¶ 95.  "[S]peculation is insufficient to establish the prejudice

component of an ineffective assistance of counsel claim."  *State v. Blackburn*, 4th

Dist. Jackson No. 18CA32020-Ohio-1084, ¶ 37, citing *State v. Tabor*, 4th Dist.

Jackson No. 16CA9, 2017-Ohio-8656, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No.

13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No.

13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13,

2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-

Ohio-6191, ¶ 68. *Accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577,

971 N.E.2d 865, ¶ 86 (stating that an argument that is purely speculative cannot

serve as the basis for an ineffectiveness claim).

{¶22}  "In Ohio, a properly licensed attorney is presumed competent."

*State v. Shifflet*, 4th Dist. Athens No. 13CA23, 2015-Ohio-4250, 44 N.E.3d 966, ¶

37, citing *State v. Davis,*4th Dist. Scioto Nos. 13CA3589, 13CA3593, 2014-Ohio-

5371; *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶

62; *State v. Moore,* 4th Dist. Adams No. 13CA965, 2014-Ohio-3024, ¶ 25.

Consequently, " 'the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy.' "

*State v. Vance*, 4th Dist. Jackson No. 18CA2, 2018-Ohio-5344, ¶ 10, quoting

*Strickland* at 689.  "Debatable strategic and tactical decisions may not form the

basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks

as if a better strategy had been available."  *State v. Detienne*, 4th Dist. Athens

No. 16CA13, 2017-Ohio-9105, ¶ 35, citing *State v. Cook*, 65 Ohio St.3d 516,

524, 605 N.E.2d 70 (1992). "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *Id.* Finally," '[t]he scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.' " *State v. Hammond*, 4th Dist. Ross No. 18CA3662, 2019-Ohio-4253, ¶ 42, quoting *Conway* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101.

ANALYSIS

**{¶23}** Initially, we note that although Appellant in part alleges that permitting the State to cross examine Appellant with regard to Dr. Nichting's report resulted in incriminating answers, he fails to identify any incriminating answers in the trial transcript. "[I]t is not the reviewing court's obligation to search the record for evidence to support an appellant's argument as to any alleged error[.]" *State v. Ozeta*, 4th Dist. Adams No. 02CA746, 2004-Ohio-329, ¶ 18, citing *State v. McGuire* (Dec. 14, 1994), 9th Dist. Nos. 16423 and 16431. Nevertheless, a review of the trial transcript appears to reveal that, at most, the State asked Appellant two questions on cross examination pertaining to Dr. Nichting's report: (1) was Appellant drinking prior to shooting the gun, and (2) did Appellant recall telling Dr. Nichting that if he (Appellant) acted suicidal maybe they would take you seriously. Thus, the question is whether Appellant's trial counsel was ineffective for not objecting to the admission of Appellant's sanity

report, or not objecting to these questions posed by the State on cross examination.

      a.  Counsel's Failure to Object to the Admission of the Sanity Report

**{¶24}** It was Appellant who moved the trial court for a sanity evaluation hoping to support an NGRI defense. Unfortunately for Appellant, Dr. Nichting concluded that her examination of Appellant did not support an NGRI defense. However, Dr. Nichting did find that Appellant was suffering from a "severe mental disease" at the time of the shooting, which Appellant's trial counsel confirmed on cross examination. Contrary to Appellant's assertion, we find that his trial counsel did not abandon Appellant's NGRI defense. In his closing, Appellant's trial counsel acknowledged the doctor's unfavorable opinion regarding Appellant's NGRI defense, but noted the doctor's finding that Appellant suffered a "severe mental disease," and appeared to urge the jury to disavow the doctor's opinion that a NGRI defense was unwarranted. And, the trial judge instructed the jury on the NGRI defense. Therefore, we find that Appellant has not proven that his trial counsel's failure to object to the admission of Appellant's report was other than a strategy to assert the additional defense of NGRI. *Vance*, 4th Dist. Jackson No. 18CA2, 2018-Ohio-5344, ¶ 10.

      b.  Counsel's Failure to Object to State's Cross Examination

**{¶25}** Appellant argues that his trial counsel should have objected to the State's cross examination of him based on his sanity report pursuant to R.C. 2945.371(J).

**{¶26}** R.C. 2945.371(J) states:

> *No statement* that a defendant makes in an evaluation or hearing under divisions (A) to (H) of this section relating to the defendant's competence to stand trial or to the defendant's mental condition at the time of the offense charged shall be used against the defendant on the *issue of guilt* in any criminal action or proceeding, but, in a criminal action or proceeding, the prosecutor or defense counsel may call as a witness any person who evaluated the defendant or prepared a report pursuant to a referral under this section. Neither the appointment nor the testimony of an examiner appointed under this section precludes the prosecutor or defense counsel from calling other witnesses or presenting other evidence on competency or insanity issues. (Emphasis added.)

**{¶27}** The Ohio Supreme Court found that "[t]he plain language of the statute strictly prohibits the use of a defendant's statements on the issue of *guilt*." (Emphasis Added.) *State v. Harris*, 142 Ohio St. 3d 211, 2015-Ohio-16628 N.E.3d 1256, ¶ 28. The Court went on to state: "Accordingly, R.C. 2945.371(J) also prohibits the admission of evidence from the defendant's psychiatric evaluation if the defendant neither initiates the evaluation nor attempts to introduce any psychiatric evidence." *Id.* The Court continued: "these restrictions" do not prohibit considering defendant's statements addressing the issue of the defendant's mental state or sanity. *Id.*

**{¶28}** Unlike in *Harris*, Appellant initiated his evaluation for purposes of supporting an NGRI defense, and asserted an NGRI defense at trial. Further, the State's questions on cross (i.e. whether Appellant had been drinking prior to shooting the gun and whether Appellant could recall telling Dr. Nichting that if he (Appellant) acted suicidal maybe they would take you seriously) addressed Appellant's mental state or sanity, which is permitted under *Harris*'s reading of

R.C. 2945.371(J).  Therefore, we find that trial counsel's failure to object to these questions on cross examination was not deficient representation.

### c.  Counsel's Cross Examination of Dr. Nichting

**{¶29}** Trial counsel elected to rely on Dr. Nichting's finding that Appellant suffered a "serious mental disease" at the time of the shooting to support his argument that Appellant was NGRI.  However, as we previously discussed, Dr. Nichting also opined that his examination of Appellant did not support a NGRI defense.  Under these circumstances, we find that a less aggressive cross examination of Dr. Nichting is within the ambit of trial strategy so as not to draw further attention of Dr. Nichting's opinions that were unfavorable to Appellant's defense.  See generally *Hammond*, 4th Dist. 2019-Ohio-4253, ¶ 42.

**{¶30}**  In sum, we find that trial counsel's representation of Appellant was not deficient because the Appellant has failed to prove that his trial counsel's actions were other than strategic decisions that were consistent with the law, and even assuming arguendo counsel's representation was deficient, we find that Appellant has failed to "show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  *Jarrell*, 4th Dist. Gallia No. 15CA8, 2017-Ohio-520, 85 N.E.3d 175, ¶ 48.  Therefore, we overrule Appellant's second assignment of error.

CONCLUSION

**{¶31}** Accordingly, having overruled both of Appellant's assignments of error, we affirm the trial court's judgment entry of conviction.


**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY:    _____
Kristy S. Wilkin Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**